[994 NYS2d 256]

The People of the State of New York, Plaintiff, v Michael Kramer, Defendant.

Justice Court of the Village of Massapequa Park, Nassau County, July 30, 2014

### APPEARANCES OF COUNSEL

*Barket Marion Epstein & Kearon, LLP*, Garden City (*Kevin Kearon* of counsel), for defendant.

*Walsh Markus McDougal & DeBellis, LLP*, Garden City (*John R. Yetman* of counsel), for plaintiff.

### OPINION OF THE COURT

Steven G. Leventhal, J.

In appearance summons number 3305 dated October 2, 2012, and in an information of the same date, it was charged that on October 2, 2012 the defendant, a registered sex offender, violated chapter 279 (sex offenders), article I (residency restrictions), section 279-3 (prohibited acts) of the Code of the Incorporated Village of Massapequa Park, by residing at 117 First Avenue, Massapequa Park, New York (the premises), a location within one mile of a school.

The defendant moves to dismiss appearance summons number 3305 on the grounds that: (1) pursuant to Village Code § 279-5, the residency restrictions imposed by Village Code § 279-3 are inapplicable to him because he resides at the premises pursuant to an order of the Nassau County Court dated April 3, 2012 approving the conditions of his probation; (2) the residency restrictions imposed by Village Code § 279-3 are inapplicable to him because he established his residence prior to its enactment; (3) Village Code § 279-3, as applied to him, is preempted by article 6-C of the Correction Law (Sex Offender Registration Act), because he is serving a court imposed sentence of probation under the supervision of the Nassau County Probation Department; (4) Village Code § 279-3, as applied to him, violates article I, § 10, clause 1 of the United States Constitution, which, inter alia, prohibits the states from adopting ex post facto laws; (5) Village Code § 279-3 is facially void for vagueness under the Due Process Clause of the Fourteenth Amendment to the United States Constitution; (6) Village Code § 279-3 facially violates the fundamental right of covered persons to live where they wish under the Fifth and Fourteenth Amendments to the United States Constitution; and (7) Village Code § 279-3 constitutes an unconstitutional taking of a protected property interest in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

Facts

On December 12, 2011, defendant was convicted of violating Penal Law § 263.15 (promoting a sexual performance by a child), a class D felony, by a plea of guilty entered in the County Court for the County of Nassau. On April 3, 2012, defendant was sentenced to a six-month term of incarceration, following which he was placed under the supervision of the Nassau County Department of Probation for a term of 10 years commencing on July 25, 2012. As a result of the conviction, the defendant was classified as a level one sex offender.[1]

Village Code chapter 279 was enacted on March 23, 2009. Village Code § 279-3 provides, in pertinent part, that "[i]t shall be unlawful for any registered sex offender to establish a residence or domicile within a one-mile radius of . . . [a]ny school and park." On August 13, 2012, the Village Board of Trustees re-

---

1. Pursuant to Correction Law §§ 168-n and 168-*l*, a sex offender is classified as a level three offender if the risk of repeat offense is high, a level two offender if the risk of repeat offense is moderate, or a level one offender if the risk of repeat offense is low.

pealed Village Code § 279-6, which made the residency restrictions imposed by Village Code § 279-3 inapplicable to residents who had established their residencies prior to its enactment. Village Code § 279-8 (penalties for offenses) provides that "[a]ny person violating the provisions of § 279-3 of this article shall, upon conviction, be subject to a fine of up to $2,500. Each and every day a violation exists or continues shall be a separate violation."

The defendant claims, and the People do not dispute, that the defendant owned and resided at the premises prior to the adoption of Village Code § 279-3. It is also undisputed that the defendant resided at the premises prior to the misconduct that led to his criminal prosecution, prior to his conviction of violating Penal Law § 263.15, and prior to his classification and registration as a sex offender.

The original conditions of defendant's probation provided, in pertinent part, that he would reside in a residence approved by his probation officer or the court, that he would not relocate without the approval of the Probation Department or the court, and that he would "refrain from knowingly entering into or upon any school grounds or within 1,000 feet of any real property boundary line of any school grounds." The original conditions of defendant's probation further provided that he would "relocate within 60 days from [his] current residence to [a] residence deemed appropriate by Probation."

By an order dated January 10, 2014, the Nassau County Court modified defendant's conditions of probation by restricting the times of defendant's outdoor lawn and yard maintenance activities. In the January 10, 2014 order, the County Court noted that

> "the Court directed the defendant to move from this residence within 60 days of sentence to a residence deemed appropriate by Probation, however, after reviewing the distance to McKenna Elementary School it was discovered that the defendant[']s residence is 1360 feet from the school grounds but less than 1000 feet from Nassau County Police Academy located in the former elementary school, therefore . . . [defendant] was permitted to remain at this residence."

Court Ordered Conditions of Probation

Defendant first moves to dismiss appearance summons number 3305 on the grounds that pursuant to Village Code

§ 279-5, the residency restrictions imposed by Village Code § 279-3 are inapplicable to him because he resides at the premises pursuant to an order of the Nassau County Court dated April 3, 2012, approving the conditions of his probation.

This is a fact-based defense that would more properly be asserted at trial. The record presently before the court is limited to the affirmations of counsel. These do not constitute competent, admissible evidence. Copies of an order and conditions of probation dated April 3, 2012, and an order enlarging conditions of probation dated January 10, 2014 are attached as exhibits to the affirmation of Kevin Kearon, Esq., dated March 12, 2014. However, these documents do not indicate the date on which the defendant was first permitted by the Probation Department to remain at the premises, or when that changed condition of defendant's probation was first approved by the County Court.

Accordingly, the court is unable to find, as a matter of fact, that the defendant resided at the premises pursuant to an order of the Nassau County Court on October 2, 2012, the date that he is alleged to have violated Village Code § 279-3.

Defendant's motion to dismiss on the grounds that he resides at the premises pursuant to an order of the Nassau County Court is denied with leave to renew at trial.

Retroactivity

The second basis upon which the defendant seeks dismissal of summons number 3305 is that the residency restrictions imposed by Village Code § 279-3 are inapplicable to him because he established his residence prior to its enactment. The defendant argues that the residency restrictions have been applied to him retroactively.

Village Code § 279-3 provides, in pertinent part, that "[i]t shall be unlawful for any registered sex offender to *establish* a residence or domicile within a one-mile radius of . . . [a]ny school and park" (emphasis added). The accusatory instrument alleges that on October 2, 2012 the defendant violated Village Code § 279-3 by "*residing* in the Village of Massapequa Park as a registered sex offender within one mile [of] schools and parks" (emphasis added). The accusatory instrument further alleges that the defendant "*resides* within 1,000 feet of a school" (emphasis added).

Here, again, in the absence of competent, admissible evidence, the court is unable to make a factual determination as to when the defendant established his residency at the premises.

■ While the court cannot, on the record presented, determine the underlying factual issue of when the defendant established his residency, there remains the question of whether the allegation that the defendant "resides" at a restricted location is sufficient to support a charge of violating the local law, which prohibits a registered sex offender from "establishing" a residence at a restricted location. Implicitly, defendant argues that the accusatory instrument is facially insufficient, and seeks dismissal pursuant to CPL 170.30 (1) (a); 170.35 (1) (a) and 100.40 (1) (b).

To survive a challenge for facial insufficiency, an information must conform to the requirements of CPL 100.15, and must set forth nonhearsay allegations of fact which, if true, establish every element of the offense charged. (CPL 100.40 [1] [c]; *People v Hall*, 48 NY2d 927 [1979].)

Here, these pleading requirements are satisfied if the prohibition against "establishing" a residence at a restricted location, for the purposes of Village Code § 279-3, may be interpreted as a prohibition against "residing" in a previously established residence at such a location.

On August 13, 2012, the Village Board of Trustees amended chapter 279 (sex offenders) of the Village Code by adopting a local law repealing Village Code § 279-6, which made the residency restrictions imposed by Village Code § 279-3 inapplicable to residents who had established their residencies prior to its enactment.

Amendatory acts which alter the text of an existing enactment are normally adopted with the purpose of making the old law conform to a more recent legislative intention. (*See* McKinney's Cons Laws of NY, Book 1, Statutes § 368.) An amendment of a legislative enactment may be express or implied. (Statutes § 370.)

The intention of the legislature is the primary consideration in the construction of amendments. (*See* Statutes § 191.) It is presumed that an amendment was made to effect some purpose, and to make some change in the existing law. (*Id.*) In accordance with general rules of statutory construction, an amendment and the original statute will be construed together, as if constituting a single law passed at the same time. (*See* Statutes § 192.)

Insofar as there is any repugnancy between the original act and the amending act, the original must be deemed to have

been repealed by the amendment. The amendment, being the later expression of the legislature, has the effect of repealing by implication those provisions of the original act that cannot be reconciled with it, particularly where the later enactment deals specifically with the matter in issue. (*Id.*)

It is a general rule of statutory construction that, if possible, all parts of an enactment shall be harmonized with each other as well as with the general intent of the whole enactment. Broadly stated, the whole and every part of a law must be considered in determining the meaning of any of its parts. (*See* Statutes § 98.) As stated by the authors of Statutes § 98 (b):

> "The effort in every case must be to ascertain and carry out the intent of the Legislature; and, where the use of certain words in a statute are inconsistent with that intention, it is the duty of the court to reject those words, when, by rejecting them, the clear intent of the Legislature is carried out. Thus, when confronted with inconsistent provisions of a statute, the court must view the statute as a whole, and consider its scheme and history and purpose in an effort to find the legislative intent, and then harmonize the inconsistencies in such way as to carry out that intent, even to the extent, if necessary, of disregarding specific provisions which are inconsistent with what appears to be the dominant intent."

Further, the court may, in proper cases, depart from a literal construction, and instead sustain the legislative intention although it is contrary to the letter of the enactment. (*See* Statutes § 111.)

> "The letter of a statute is not to be slavishly followed when it leads away from the true intent and purpose of the Legislature or leads to conclusions inconsistent with the general purpose of the statute or to consequences irreconcilable with its spirit and reason; and statutes are not to be read with literalness that destroys meaning, intention, purpose or beneficial end for which the statute has been designed." (*Id.* [citations omitted].)[2]

Here, the intention of the Village Board of Trustees to prohibit sex offenders from *residing* within one mile of any school or

---

2. Courts are generally stricter in the interpretation of penal statutes, applying penal statutes to facts that are within both the spirit and the letter of

park is demonstrated by express findings and legislative intent set forth in Village Code § 279-1, which provides, in pertinent part, that

> "[t]he Village Board further finds that restricting registered sex offenders from residing in close proximity to places where children are likely to congregate is likely to reduce the opportunity and temptation for, and can minimize the risk of, repeated acts against minors.
>
> ". . . It is the intention of the Village Board to exercise its authority pursuant to Article IX of the New York State Constitution and § 10 of the Municipal Home Rule Law to protect and safeguard the lives and well-being of the community, especially minors, from registered sexual [sic] offenders by prohibiting registered sex offenders from residing in close proximity to places where children could naturally congregate, such as schools and parks."

Further, the intent of the Village Board of Trustees to make the residency restrictions imposed by Village Code § 279-3 applicable to residents who had established their residencies prior to its enactment was demonstrated by the adoption on August 13, 2012, of a local law repealing the "grandfather" exception set forth in Village Code § 279-6. Finally, the intent of the Village Board to regulate the continuing residency of sex offenders is demonstrated by Village Code § 279-8 (penalties for offenses), which provides, in pertinent part, that "[e]ach and every day a violation exists or continues shall be a separate violation."

Taking into account the scheme, history and purpose of Village Code chapter 279, the court finds that Village Code § 279-3 was intended by the Village Board of Trustees to prohibit a registered sex offender from residing in a restricted area within the Village.

Further, Village Code § 279-4 (notice; relocation required) provides that

> "[a]ny registered sex offender who establishes a residence or domicile in violation of the residency restrictions set forth in § 279-3 of this article shall have 30 days from receipt of a written notice from the Village Clerk to relocate to a location which does

---

the law. (*See* Statutes § 111.) Here, the defendant is charged with a violation, and not a crime. Upon conviction, the defendant would be subject to a fine only, and not to a term of incarceration. (*See* Village Code § 279-8.)

> not violate the restrictions set forth in § 279-3 of
> this article."

The sine qua non of a violation of Village Code § 279-3 is the failure to relocate within 30 days after receipt of written notice. The record before the court does not indicate whether the Village Clerk did or did not provide the defendant with written notice to relocate. However, the requirement of notice to the defendant and an opportunity to relocate contemplated by Village Code § 279-4 renders the regulation *prospective*, and not retroactive as the defendant asserts.[3]

Accordingly, defendant's motion to dismiss on the grounds that the residency restrictions imposed by Village Code § 279-3 are inapplicable to him because he established his residence prior to its enactment is denied.

Preemption

Defendant next moves to dismiss on the grounds that Village Code § 279-3, as applied to him, is preempted by article 6-C of the Correction Law (Sex Offender Registration Act), because he is serving a court imposed sentence of probation under the supervision of the Nassau County Probation Department.

■ The New York Legislature has enacted state-wide sex offender registration requirements and residency restrictions. (*See* Sex Offender Registration Act [Correction Law § 168 *et seq.*], and the residency restrictions imposed by Penal Law §§ 65.10 [4-a] and 220.00 [14].) Among other things, these statutes prohibit certain sex offenders on probation from being present or residing within 1,000 feet of a school.

The Sex Offender Housing Procedural Guidelines, adopted by the New York Executive Department, Division of Probation pursuant to Executive Law §§ 243 and 257-b and Correction Law § 273, recognize the importance of finding housing for sex offenders and the difficulty imposed by restrictive local laws:

> "The State's coordinated and comprehensive approach also recognizes the necessity to provide emergency shelter to individuals in need, including those who are sex offenders, and the importance of stable housing and support in allowing offenders to live in and re-enter the community and become law-abiding and productive citizens . . . .
> "[I]t is not appropriate for any one community or

---

**3.** For reasons stated infra, the court does not here address the constitutional claims asserted by defendant.

county to bear an inappropriate burden in housing sex offenders because another community has attempted to shift its responsibility for those offenders onto other areas of the State. The proliferation of local ordinances imposing residency restrictions upon sex offenders, while well-intentioned, have made it more challenging for the State and local authorities to address the difficulties in finding secure and appropriate housing for sex offenders." (9 NYCRR 365.3 [c], [d] [5].)

The guidelines direct the Probation Department to consider "the availability of permanent, stable housing in order to reduce the likelihood that any such probationer will be transient." (9 NYCRR 365.4 [a] [5].)

New York's preemption doctrine was summarized by the Appellate Term, Second Department in *People v Diack* (41 Misc 3d 36 [App Term, 2d Dept, 9th & 10th Jud Dists 2013]). There, the court stated that

"[t]he state's preemption doctrine precludes local legislation where an express conflict exists between state and local laws, or where the state has clearly evinced a desire to preempt an entire field. Conflict preemption occurs when a local law prohibits that which a state law explicitly allows, or when a state law prohibits that which a local law explicitly allows. Under the doctrine of field preemption, the enactment by the state legislature of a comprehensive and detailed regulatory scheme in a particular field is deemed to demonstrate an intent to preempt local laws regulating the same subject matter. In that event, local governments are precluded from enacting laws on the same subject matter whether or not they actually conflict with state law, unless there is 'clear and explicit authority to the contrary.' When the legislature demonstrates its intent to preempt a particular subject matter, all local ordinances regarding that subject matter are preempted." (*Id.* at 38 [citations omitted].)

The majority of cases that have considered the validity of local laws that impose stricter limitations on sex offender residency than those imposed by state law have found that the state regulation of sex offender residency is part of a comprehensive scheme that preempts more restrictive local laws. (*See Terrance v City of Geneva, N.Y.*, 799 F Supp 2d 250 [WD NY 2011] [New York State legislative scheme established "that the regula-

tion and management of sex offenders (including sex offender residency restrictions) is the exclusive province of the State" and therefore preempts the City of Geneva's sex offender residency law]; *People v Oberlander*, 22 Misc 3d 1124[A], 2009 NY Slip Op 50274[U] [Sup Ct, Rockland County 2009] [Rockland County sex offender residency restriction preempted by New York State law]; *People v Blair*, 23 Misc 3d 902 [Albany City Ct 2009] [Albany County sex offender residency restriction preempted by New York State laws]; *Doe v County of Rensselaer*, 24 Misc 3d 1215[A], 2009 NY Slip Op 51456[U] [Sup Ct, Rensselaer County 2009] [Rensselaer County sex offender residency restrictions preempted by New York State laws].)

The only recent decision on the merits of preemption that has *not* found local restrictions on sex offender residency to be preempted by state law was *People v Diack*. There, the defendant was a level one registered sex offender but was not on probation when he moved within 500 feet of a school. He was charged with a violation of a Nassau County local law prohibiting level three sex offenders whose victims were under the age of 18 from residing within 1,000 feet of a school. The court noted that Penal Law § 65.10 applies to level three sex offenders (risk of repeat offense is high) serving on probation, and so it did not apply to this level one (risk of repeat offense is low) non-probationary defendant. Accordingly, the court found no conflict between Penal Law § 65.10 and the Nassau County local law. On the issue of preemption, the *Diack* court stated:

> "In our opinion, the legislature has chosen to limit its regulations over sex offenders and not to enact a comprehensive legislative scheme in the area of law concerning the residency restrictions of sex offenders who are not on parole, probation, subject to conditional discharge or seeking public assistance." (41 Misc 3d at 39.)

Therefore, the Appellate Term concluded that local governments may enact laws restricting the residency of sex offenders who are not on parole, probation, subject to conditional discharge or seeking public assistance. (*Id.*) The New York Court of Appeals granted leave to appeal on March 5, 2014. (*People v Diack*, 22 NY3d 1155 [2014].)

Here, the defendant is serving a 10-year term of supervision by the Nassau County Department of Probation, and does not fall within the population of sex offenders whose residency may be regulated by local law under the holding of the Appellate Term, Second Department in *Diack*.

In *Moore v County of Suffolk* (851 F Supp 2d 447 [ED NY 2012]), United States District Court Judge Bianco reviewed the decisions in *Terrance, Oberlander, Blair* and *Doe* in a challenge to local laws enacted by Nassau County and by the Town of Southampton. Judge Bianco noted the adverse effect of local regulation on the availability of residency for sex offenders, denied a defense motion to dismiss, and directed the plaintiff to make a separate motion for summary judgment on the preemption issue. The *Moore* case was reassigned to United States District Court Judge Chen, who also reviewed the same precedents, noted the "preliminary consensus" supporting preemption, and invited the New York Attorney General to participate in the case as amicus curiae. (Nassau County and the New York State Division of Parole were already represented in the action.) (2013 WL 4432351, 2013 US Dist LEXIS 115082 [ED NY, Aug. 14, 2013, No. 09-CV-2013 (PKC)].) *Moore* remains sub judice.

In another case pending in the Eastern District, *Wallace v New York* (2013 WL 1452018, 2013 US Dist LEXIS 51771 [ED NY, Apr. 2, 2013, 12-CV-5866 (JFB)(WDW)]), sex offenders have sued the State, Suffolk County, the New York State Department of Social Services and others under 42 USC § 1983 claiming that their federal constitutional rights were violated by enforcement of local residency restrictions, and that such restrictions are preempted under state law. There, Judge Bianco consolidated 14 similar cases and directed the clerk to consolidate future cases on the same subject matter with *Wallace.*

It appears likely that the United States District Court for the Eastern District of New York will soon render a decision on the merits of the preemption issue. In addition, a decision by the New York Court of Appeals in *Diack* may provide further guidance on the issue.

In the meantime, this court finds that Village Code § 279-3, as applied to the defendant, is preempted by article 6-C of the Correction Law (Sex Offender Registration Act) because he is serving a court imposed sentence of probation under the supervision of the Nassau County Probation Department.

The defendant's motion to dismiss on the grounds of preemption is granted.

Constitutionality

The defendant asserts that Village Code § 279-3, as applied to him, violates article I, § 10, clause 1 of the United States Con-

stitution, which, inter alia, prohibits the states from adopting ex post facto laws; is facially void for vagueness under the Due Process Clause of the Fourteenth Amendment to the United States Constitution; facially violates the fundamental right of covered persons to live where they wish under the Fifth and Fourteenth Amendments to the United States Constitution; and Village Code § 279-3 constitutes an unconstitutional taking of a protected property interest in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

Among other things, the defendant asserts that

"[t]he Village [of Massapequa Park] is very small, a mere 2.2 square miles in area. Within it, according to the Village's website, are 4 open schools and 3 parks. Well within a mile of its borders are at least another five schools. Most importantly, the Massapequa Preserve, a Nassau County Park, runs along the vast majority of the Village's western boundary. There is no part of the Village which is east of Massapequa Preserve which is more than a mile distant from it. For the small southern portion of the Village not bordered by the Preserve, a glance at a map reveals that there is no part of the Village which is more than a mile from Sunset Park, Massapequa High School, and Birch Lane Elementary School. In short . . . it is clear that there is not one single inch of the Village in which Mr. Kramer may legally reside under the current terms of Village of Massapequa Law § 279, as amended on August 13, 2012, repealing Section 279-6. Despite already having paid his debt to society for his offenses, he is banished from the home which he owns, and where he has lived most of his life, and indeed from the whole Village, on pain of a $2,500 *per day* fine" (citation omitted).

The court cannot, on the record presented, determine the availability in the Village of housing for the defendant that would comply with Village Code § 279-3.

Moreover, it is well settled that courts should avoid deciding constitutional questions needlessly. (*See Christopher v Harbury*, 536 US 403 [2002].) Here, having determined that Village Code § 279-3, as applied to the defendant while under the supervision of the Nassau County Probation Department, is preempted by

the Sex Offender Registration Act, the court need not reach the constitutional questions presented by defendant's motion.

For the foregoing reasons, appearance summons number 3305 dated October 2, 2012, and the information of the same date are dismissed.

Both counsel are commended for the courtesy and professionalism exhibited by them in these proceedings. The court notes with gratitude the exemplary pro bono service of defendant's counsel.