================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 1
The People &c.,
            Respondent,
        v.
Michael Diack,
            Appellant.


            Kathy Manley, for appellant.
            Kenneth L. Gartner, for respondent.
            New York Civil Liberties Union, amicus curiae.


PIGOTT, J.:

        In 2006, Nassau County enacted Local Law No. 4-2006

(Local Law 4), which, as relevant here, prohibits registered sex

offenders from residing within 1,000 feet of a school.  In recent

years, dozens of municipalities in this State have enacted

similar laws that prohibit registered sex offenders from living

- 1 -

within a certain distance of schools, daycare centers, parks, youth centers and other areas where children are likely to congregate.[1]  That such laws are proliferating at an accelerated rate is hardly surprising, given the significant interest involved, namely, the protection of children from sex offenders. Local governments have, understandably, relied on their police power in furthering that interest.

But a local government's police power is not absolute.

---

[1]  Sex offender residency laws have generated significant litigation in this State's local and federal courts, with almost all of the challenges to their validity involving the issue of preemption (see People v Kramer, 45 Misc 3d 458 [Village of Massapequa Park Just Ct, 2014] [village law prohibiting a registered sex offender from residing within a one-mile radius of any school or park]; Budesheim v Southampton Town Police Dept., 2014 NY Slip Op 32278[U] [Sup Ct, Suffolk County 2014] [county local law prohibiting registered sex offenders from residing within a quarter mile of the property of any school, daycare center, playground or amusement park]; Doe v County of Rensselaer, 24 Misc 3d 1215[A] [Sup Ct, Rensselaer County 2009] [county local law prohibiting level two and level three sex offenders from residing within 2,000 feet of a school or childcare facility]; People v Blair, 23 Misc 3d 902 [Albany City Ct, 2009] [county local law prohibiting level two and level three sex offenders from residing within 1,000 feet of a school or childcare facility]; People v Oberlander, 22 Misc 3d 1124[A] [Sup Ct, Rockland County 2009] [county law prohibiting sex offenders from residing, working or loitering within 1,000 feet of a school, childcare facility, playground, youth center or public swimming pool]; see also Moore v County of Suffolk, 2013 WL 4432351 [ED NY 2013] [county local law prohibiting registered sex offenders from living within a quarter of a mile of the property line of any school, licenced daycare center or playground]; Terrance v City of Geneva, 799 F Supp 2d 250 [WD NY 2011] [city law prohibiting level two and level three sex offenders from residing within 1,000 feet of a school and 500 feet of a park, playground or daycare center]).

When the State has created a comprehensive and detailed
regulatory scheme with regard to the subject matter that the
local law attempts to regulate, the local interest must yield to
that of the State in regulating that field.  We hold that the
State's comprehensive and detailed statutory and regulatory
framework for the identification, regulation and monitoring of
registered sex offenders prohibits the enactment of a residency
restriction law such as Local Law 4.

I.

In 2001, defendant, a Nassau County resident, was
convicted of the crime of possessing an obscene sexual
performance by a child (Penal Law § 263.11).  He served 22 months
in prison and, upon his release from custody, was classified a
level one sex offender under the Sex Offender Registration Act
(Correction Law art 6-C, § 168 et seq.).  Defendant was
discharged from parole on August 19, 2004.  In July 2008,
defendant reported his change of address to the New York State
Division of Criminal Justice Services.  Upon receiving this
information, the Nassau County Police Department determined that
defendant had moved to an apartment located within 500 feet of
two schools.

Defendant was charged by information with a violation
of Nassau County Local Law 4, which is codified in Nassau County
Administrative Code § 8-130.6.  That provision states, in
relevant part, that "[i]t shall be unlawful for any registered

sex offender to establish a residence or domicile where the property line of such residence or domicile lies within: (1) one thousand feet of the property line of a school; or (2) five hundred feet of the property line of a park . . ." (Nassau County Administrative Code § 8-130.6 [a] [1], [2]).  The code defines a "registered sex offender" as "a person who has been classified as a Level 1, Level 2 or Level 3 sex offender and who is required to register with the New York state division of criminal justice services, or other agency having jurisdiction," pursuant to the Sex Offender Registration Act, regardless of whether the sex offender has actually registered (id. at § 8-230.2).

Defendant moved to dismiss the information on the ground that Local Law 4 and section 8-130.6 are preempted by state law.  The District Court of Nassau County granted the motion and dismissed the charge on the ground that Local Law 4 is preempted by New York's "comprehensive statutory scheme for sex offenders."  The Appellate Term reversed and reinstated the information, holding that it could not discern any express or implied intention by the Legislature through the enactment of the Sex Offender Registration Act (and other state laws) to occupy the entire field so as to prohibit the enactment of local laws imposing "residency restrictions for sex offenders who are no longer on probation, parole supervision, subject to a conditional discharge or . . . seeking public assistance" (41 Misc 3d 36, 39 [App Term, 2d Dept, 9th and 10th Jud Dists 2013]).  A Judge of

this Court granted defendant leave to appeal.

                              II.

          Although a local government is constitutionally
empowered to enact local laws relating to the welfare of its
citizens through its police power, it is prohibited from
exercising that power through the adoption of local laws that are
inconsistent with the New York State Constitution or any general
law of the State (see NY Const, art IX, § 2 [c]; Municipal Home
Rule Law § 10 [1] [i]; [ii] [1] [a] [12]).  This doctrine of
preemption is a significant restriction on a local government's
home rule powers because although localities are "invested with
substantial powers both by affirmative grant and by restriction
on State powers in matters of local concern, the overriding
limitation of the preemption doctrine embodies 'the untrammeled
primacy of the Legislature to act . . . with respect to matters
of State concern'" (Albany Area Bldrs. Assn. v Town of
Guilderland, 74 NY2d 372, 377 [1989], quoting Wambat Realty Corp.
v State of New York, 41 NY2d 490, 497 [1977]).

          Beginning with enactment of the Sex Offender
Registration Act (SORA), the Legislature has passed and the
Governor has signed a series of laws regulating registered sex
offenders, including the Sexual Assault Reform Act (SARA) in
2000, the Sex Offender Management and Treatment Act (SOMTA) in
2007, and Chapter 568 of the Laws of 2008 (Chapter 568).  Because
the Legislature has not expressly stated an intent to occupy the

field of sex offender residency restrictions in the aforementioned laws, our focus on this appeal is whether the Legislature, by implication, has shown its intent to do so.

III.

The doctrine of field preemption prohibits a municipality from exercising a police power "when the Legislature has restricted such an exercise by preempting the area of regulation" (New York State Club Assn. v City of New York, 69 NY2d 211, 217 [1987], affd 487 US 1 [1988]; see Albany Area Bldrs. Assn., 74 NY2d at 377).  Although field preemption may be "express" as evidenced by the Legislature's stated directive, it may also "be implied from a declaration of State policy by the Legislature . . . or from the fact that the Legislature has enacted a comprehensive and detailed regulatory scheme in a particular area" (Consolidated Edison Co. of N.Y. v Town of Red Hook, 60 NY2d 99, 105 [1983] [citations omitted]).  Intent to preempt the field may "be implied from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme, including the need for State-wide uniformity in a given area" (Albany Area Bldrs. Assn., 74 NY2d at 377, citing Robin v Incorporated Vil. of Hempstead, 30 NY2d 347 [1972]).

The People assert that the statutes at issue (SORA, SARA, SOMTA and Chapter 568) either do not specifically mention residency at all or only tangentially touch upon residency by,

for example, limiting travel by parolees and those on probation in areas with schools or childcare centers, and other places where children may congregate.  Such "piecemeal" provisions, the People contend, do not constitute the type of "comprehensive and detailed regulatory scheme" from which preemption can be inferred, and it necessarily follows that the Legislature meant to leave to local governments the authority to impose residency restrictions on registered sex offenders who are not on parole or probation or subject to any type of supervision.  But it is clear from the State's continuing regulation with respect to identification and monitoring of registered sex offenders that its "purpose and design" is to preempt the subject of sex offender residency restriction legislation and to "occupy the entire field" so as to prohibit local governments from doing so (see Robin, 30 NY2d at 350).[2]  We therefore reverse the order of the Appellate Term.

IV.

This State's foray into sex offender management began in 1996 with the enactment of SORA, which addressed the Legislature's concern about the "danger of recidivism posed by sex offenders, especially those sexually violent offenders who commit predatory acts characterized by repetitive and compulsive behavior" (L 1995, ch 192, § 1).  SORA, as its title makes clear,

---

[2]  In light of our holding that this is an issue involving "field preemption," we do not address defendant's "conflict preemption" argument.

is a registration and notification statute directed at protecting the public from sex offenders, who, upon their release, are assigned a risk level dependent upon whether their risk for re-offending is low (level one), moderate (level two) or high (level three) (see Correction Law § 168-l [6] [a]-[c]).  The offender is required by law to register as a sex offender for a period that correlates with his particular risk-level and designation (see id. § 168-f; § 168-h [1]-[3]).  The Legislature has described SORA's registration requirement as "a proper exercise of the state's police power regulating present and ongoing conduct" of sex offenders (L 1995, ch 192, § 1 [emphasis supplied]).  The registration and notification requirements are, of course, applicable statewide and are aimed at providing local citizens and law enforcement agencies with critical information regarding sex offenders residing within their respective jurisdictions (see Correction Law §§ 168-f, 168-j).

Four years later, in 2000, the Legislature passed and the Governor signed the Sex Assault Reform Act which, as relevant here, amended the Penal Law and the Executive Law to require the imposition of a mandatory condition prohibiting sex offenders placed on probation, conditional release or parole from entering upon school grounds or other facilities where children receive care ("school grounds mandatory condition") (2000 McKinney's Session Law News of NY, Ch 1).  As part of that law, Penal Law § 65.10 was amended to require that a court imposing a sentence of

probation or conditional discharge upon a person convicted of an enumerated sex offense[3] and where the victim of the offense was under the age of eighteen at the time the offense was committed, direct that the offender "shall refrain from knowingly entering into or upon any school grounds", as that term is defined in Penal Law § 220.00 (14) (a), or any other facility of institution that is "primarily used for the care and treatment of persons under the age of eighteen . . ." (Penal Law § 65.10 [4-a] [a]). At the same time, Executive Law § 259-c (14) was amended to require the parole board to impose the school grounds mandatory condition on offenders of the aforementioned enumerated sex offenses who are released on parole, who are conditionally released or who are subject to a period of PRS.  In 2005, the Legislature extended the school grounds mandatory condition to sex offenders designated level three pursuant to Correction Law § 168-l(6), and also adopted the broad definition of "school grounds" set forth in Penal Law § 220.00 (14) (a), (b) (see 2005 McKinney's Session Law News of NY, Ch 544; see also Executive Law

---

[3]  Those sex offenses are set forth in Penal Law articles 130 ("Sex Offenses"), 235 ("Obscenity and Related Offenses"), 263 ("Sexual Performance by a Child") and Penal Law §§ 255.25, 255.26, and 225.27 (Incest in the third, second and first degree, respectively).  Initially, SARA imposed the school grounds mandatory condition on an offender who committed "Incest" as it was then referred to in former Penal Law § 255.25.  In 2006, SARA was amended to require the imposition of the mandatory condition to the newly-enacted offenses of incest in the first, second and third degree (2006 McKinney's Session Law News of NY, Ch 320).

§ 259-c [14]).

The critical provision under SARA (as amended in 2005) is its reference to this definition of "school grounds":

> "(a) . . . any building, structure, athletic playing field, playground or land contained within the real property boundary line of a public or private elementary, parochial, intermediate, junior high, vocational, or high school, or (b) <u>any area accessible to the public located within one thousand feet of the real property boundary line comprising any such school</u> or any parked automobile or other parked vehicle located within one thousand feet of the real property boundary line comprising such school. For the purposes of this section an 'area accessible to the public' shall mean sidewalks, streets, parking lots, parks, playgrounds, stores and restaurants" (Penal Law § 220.00 [14] [a], [b] [emphasis supplied]).[4]

Courts have interpreted section 220.00 (14) as creating a residency restriction prohibiting certain classes of sex offenders from living within 1,000 feet of a school (see <u>Terrance v City of Geneva</u>, 799 F Supp 2d 250, 255 [WD NY 2011]; <u>People v Blair</u>, 23 Misc 3d 902, 908 [Albany City Ct 2009]; <u>People v Oberlander</u>, 22 Misc 3d 1124 [A] [Sup Ct, Rockland County 2009]). The practical effect is that any sex offender who is subject to the school grounds mandatory condition is unable to reside within 1,000 feet of a school or facility as defined in Penal Law §

---

[4] When SARA was enacted in 2000, the school grounds mandatory condition prohibited sex offenders from actually going inside the boundary line of a school. The 2005 SARA amendment broadened the school grounds mandatory condition to 1,000 feet beyond the boundary line.

220.00 (14) (b).  Therefore, SARA's enactment, with its various amendments over the years, provides clear evidence of the State's intention to occupy the field with regard to sex offender management, including where certain sex offenders may reside, and it is of no moment that the defendant in this appeal does not fall within the class of sex offenders who are subject to that mandatory condition.

Further evidence of the State's intent to occupy the field of sex offender housing is found in the enactment of Chapter 568 of the Laws of 2008.  That chapter directed the Division of Parole (DOP), Division of Probation and Correctional Alternatives (DPCA) and the Office of Temporary and Disability Assistance (OTDA) "to promulgate rules regarding the placement of sex offenders" to address the inability of those agencies "to locate suitable housing for convicted sex offenders" (Assembly Mem in Support, Bill Jacket, L 2008, ch 568, at 7).  Because the lack of suitable housing created "an unacceptable high level of concentration of sex offenders in certain residential areas," resulting in "an unnecessary risk to public safety," Chapter 568's objective was to remedy that problem by allowing the DOP, DPCA and OTDA to consider certain relevant factors when "investigating and approving the residences of sex offenders" (id. [emphasis supplied]).

In approving Chapter 568, the Governor stated that this statute was necessary to address the challenges sex offenders

faced upon leaving prison in light of the shortage of affordable housing and the enactment of "well-intentioned" local ordinances that imposed "even more restrictive residency limitations on registered sex offenders" than the restrictions contained in SARA (Governor's Approval Mem, Bill Jacket, L 2008, ch 568, at 6, 2008 NY Legis Ann at 1668-1669 [emphasis supplied]). The Governor further acknowledged that this chapter "recognizes that the placement of these offenders in the community has been and will continue to be a matter that is properly addressed by the State," and that the chapter's guidelines would "balance" the competing factors of public safety and the provision of suitable housing for sex offenders, leading "to a coordinated and comprehensive statewide policy that will both protect the public and ensure that there is suitable and appropriate housing available for sex offenders in every community in the State" (id. [emphasis supplied]).

Chapter 568 added new subdivisions to Executive Law §§ 243 and 259,[5] and Social Services Law § 20, by requiring certain agencies to promulgate rules and regulations governing sex offender placement and housing (see Executive Law § 243 [4] [requiring the DPCA to give recommendations that include guidelines and procedures concerning "the placement of sex

_____

[5] Chapter 568 amended Executive Law § 259 (5). That provision was repealed in 2011; the substance of that provision has since been relocated Correction Law § 203 (1) (see 2011 Session Law News of NY, Ch 62).

offenders designated level two or level three sex offenders pursuant to (SORA)," and requiring the regulations to direct local probation departments to consider certain factors concerning placement of such offenders]; Correction Law § 203 [1] [requiring the State Commissioner of Corrections and Community Supervision to promulgate similar rules and regulations for level two and level three offenders who are released on presumptive release, parole, conditional release or PRS]; Social Services Law § 20 [8] [a] [requiring the OTDA to promulgate rules and regulations for the conditions under which local social services officials may determine the placement of level two or level three sex offenders who, upon their release, are expected to apply for, or receive, public assistance and who are determined to be in immediate need of shelter]).

Pursuant to these regulations, regardless of whether the level two or level three sex offender is sentenced to probation or is released, the Legislature has determined that placement of the sex offender is dependent on a number of factors, all of which must be considered by the relevant agency. Such factors include the concentration of registered sex offenders in a given area or municipality; the number of registered sex offenders residing at a certain property; the proximity of entities that have vulnerable populations; the sex offender's accessibility to family members or friends or other supportive services such as local sex offender treatment

programs; and the availability of permanent, stable housing so as to reduce the possibility that the sex offender will be transient (see Executive Law § 243 [4] [a]-[e]; Correction Law § 203 [1] [a]-[e]; Social Services Law § 20 [8] [b] [i]-[iv][6]).

The regulations promulgated pursuant to Executive Law § 243 (4), Correction Law § 203 (1) and Social Services Law § 20 (8) (a) all recognize that the placement and housing of sex offenders "are areas that have been, and will continue to be, <u>matters addressed by the State</u>, . . . [and] . . . <u>further the State's coordinated and comprehensive policies in these areas</u> . . ." (9 NYCRR § 365.3 [b] [emphasis supplied] [level two and level three sex offenders on probation]; 9 NYCRR 8002.7 [b]; 18 NYCRR 352.36 [a] [2]). The regulations also acknowledge that the maintenance and location of acceptable housing for sex offenders constitutes "an enormous challenge that impacts all areas of the State" because sex offenders, upon release from prison, typically return to the communities where they previously resided and the proliferation of well-intentioned local ordinances imposing residency restriction has hampered the ability of the State and local authorities to address the difficulty in finding

---

[6] One factor that must be considered by local social services officials but need not be considered by the other two agencies is that the Department of Corrections and Community Supervision must investigate and approve any placement of a level two or level three sex offender by local social service officials (see Social Services Law § 8 [b] [v]). Local social services officials need not, however, consider the availability of stable housing in determining placement.

appropriate housing for sex offenders (9 NYCRR 365.3 [d] [5]; 9 NYCRR 8002.7 [d] [5]; 18 NYCRR 352.36 [a] [4] [v]).

Further evidence of the legislative scheme to regulate sex offenders is the Legislature's enactment in 2007 of the Sex Offender Management Treatment Act (L 2007, ch 7).  This statute created a procedure for the confinement of certain sex offenders upon the expiration of their prison terms, resulting in their transfer to secure treatment facilities (see Mental Hygiene Law §§ 10.03 [e], 10.07 [f]).  Those offenders who are deemed not to require confinement are subjected to an outpatient regimen of strict and intensive supervision and treatment ("SIST") (id. at § 10.07), including the potential designation of specific residences or types of residence by the Department of Corrections and Community Supervision (id. at § 10.11 [a] [1]).  SOMTA was enacted for the dual purposes of protecting the public from recidivistic sex offenders while ensuring that sex offenders have access to appropriate treatment (id. § 10.01 [a]-[c]).

V.

The defendant in this appeal is a designated level one sex offender, is not on probation or parole, nor is he subject to conditional release or PRS.  None of the aforementioned provisions that even touch upon residency or placement apply to him.  Contrary to the People's contention, however, that does not mean that the State has delegated to local governments the duty of enacting residency laws concerning registered sex offenders.

Nor does it mean, as Appellate Term held, that "the Legislature has chosen to limit its regulations over sex offenders and not to enact a comprehensive legislative scheme in the area concerning the residency restrictions of sex offenders who are not on parole, probation, subject to conditional discharge or seeking public assistance" (41 Misc 3d at 39).  Rather, it is clear that the State has been continuously active in this field and, as such, it is evident that the State has chosen to occupy it.

What SORA, SARA, Chapter 568 and SOMTA represent is a detailed and comprehensive regulatory scheme involving the State's ongoing monitoring, management and treatment of registered sex offenders, which includes the housing of registered sex offenders.  The monitoring and treatment of sex offenders does not end when the sex offender is released from prison.  The State, through SORA, has devised a risk level system to identify the offenders who are most likely to reoffend.  That system operates in tandem with SARA and Chapter 568, which refer to risk levels in their determinations as to where certain registered sex offenders are allowed.  In the case of probation or release from prison, State regulations require local probation and parole officials to consider factors delineated by the State in determining where level two and level three sex offenders are to be placed.  It is not coincidental that SARA and Chapter 568 do not address those registered sex offenders who are least likely to reoffend, i.e., those designated level one, and instead

focus on those sex offenders who have been designated as exhibiting a moderate to high risk of recidivism, i.e., those designated level two and three, respectively.  This top-down approach, with the State dictating the relevant factors that local officials are required to consider when placing such offenders in housing, plainly establishes that sex offender registry restrictions are within the exclusive bailiwick of the State and accentuates the State's intent to occupy the field.

Residency restriction laws such as Local Law 4 encroach upon the State's occupation of the field, "inhibit the operation of [this] State's general law and thereby thwart the operation of [this] State's overriding policy concerns" relative to the identification, monitoring and treatment of sex offenders (Albany Area Bldrs. Assn., 74 NY2d at 377 [citation and internal quotations omitted]).  They also collide with state policy by prohibiting sex offenders who are on probation and parole from living in housing that has been approved by the Division of Probation and Correctional Alternatives and Division of Parole.

Local residency restriction laws also hinder State-wide uniformity concerning sex offender placement.  SORA, SARA, Chapter 568 and SOMTA are State-wide laws that apply to every community, including those particular laws and regulations regarding sex offender placement.  Local Law 4 and similar laws are easily passed and, understandably, receive local support, but, as the State has acknowledged, communities in recent years

have taken to shifting the burden of sex offender housing to neighboring communities, thereby frustrating the State's policy that each community bear the burden (see 9 NYCRR 365.3 [d] [5] [noting that "it is not appropriate for any one community or county to bear an inappropriate burden in housing sex offenders because another community has attempted to shift its responsibility for those offenders onto other areas of the State"]; 9 NYCRR 8002.7 [d] [5] [same]; 18 NYCRR 352.36 [a] [4] [v]).  As such, the unmistakable intent of the State to preempt the field prohibits their enactment.

Accordingly, the order of the Appellate Term should be reversed and the information dismissed.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order reversed and information dismissed.  Opinion by Judge Pigott.  Chief Judge Lippman and Judges Read, Rivera and Abdus-Salaam concur.  Judges Stein and Fahey took no part.

Decided February 17, 2015