# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 76
The People &c. ex rel. Raymond
Negron,
   Respondent,
  v.
Superintendent, Woodbourne
Correctional Facility,
   Appellant.

Brian D. Ginsberg, for appellant.
Elon Harpaz, for respondent.

GARCIA, J.:

   This appeal concerns the scope of a provision of the Sexual Assault Reform Act

(SARA) which mandates that the Board of Parole (the Board) impose a condition

- 1 -

restricting entry upon school grounds on certain offenders (*see* Executive Law § 259-c [14]).  The issue is whether that condition is mandatory for any parolee who has been designated a level three sex offender under the Sex Offender Registration Act (SORA) or only for those level three offenders who are serving a sentence for an offense enumerated in the statute.  We hold that the condition is mandatory only for those level three sex offenders serving a sentence for an enumerated offense and therefore affirm.

Petitioner was convicted of first-degree sexual abuse in 1994 and, as a result, was designated a level three sex offender, the highest risk classification under SORA (*see* Correction Law § 168-l [6] [c]).  Level three sex offenders must register once a year for life and verify their residence with local law enforcement every 90 days (*see* Correction Law § 168-h [2]-[3]; *see generally People v Cook*, 29 NY3d 121, 125-126 [2017]).  A level three sex offender is permitted to petition annually to modify the designation (Correction Law § 168-o).

Petitioner remained a level three sex offender when he was convicted of attempted second-degree burglary in 2005 and sentenced to a prison term of 12 years to life.  In 2016, the Board granted petitioner parole and prescribed as a mandatory condition that he not knowingly enter school grounds.  The authority for the mandatory school grounds condition is found in Executive Law § 259-c (14), which provides that:

> "notwithstanding any other provision of law to the contrary, where a person serving a sentence for an [enumerated offense] and the victim of such offense was under the age of eighteen at the time of such offense *or such person has been designated a level three sex offender* . . . is released on parole or conditionally released pursuant to subdivision one or two of this section, the board shall require, as a mandatory condition of such release, that such

sentenced offender shall refrain from knowingly entering into or upon any school grounds" (emphasis added).

Although petitioner's conviction did not qualify as an enumerated offense under the statute, the Board determined that, because of his level three sex offender designation, he was nevertheless subject to the mandatory condition.[1]

The practical effect of the school grounds condition is to prevent the parolee from residing within 1,000 feet of a school (*see People v Diack*, 24 NY3d 674, 682 [2015]; Penal Law § 220.00 [14] [b]). At the time he was set to be released on parole, petitioner was unable to secure housing compliant with this restriction. As a result, he was transferred to Woodbourne Correctional Facility for placement in a residential treatment facility.[2]

Petitioner commenced this habeas corpus proceeding against the Superintendent of the Woodbourne Correctional Facility, arguing that the mandatory school grounds condition did not apply to him, and his detention was therefore unlawful, because at the time of his scheduled release to community supervision he was not serving a sentence for one of the offenses enumerated in Executive Law § 259-c (14). Supreme Court denied the petition without a hearing.

On appeal, the Appellate Division unanimously reversed (170 AD3d 12 [3d Dept 2020]).[3] That Court determined that the term "such person" in Executive Law § 259-c (14)

---

[1] The enumerated crimes are primarily sex offenses under SORA with the exception of certain kidnapping offenses found in Penal Law article 135.

[2] *See Matter of Gonzalez v Annucci*, 32 NY3d 461, 466-67 (2018); *People ex rel. Johnson v Superintendent, Adirondack Corr. Facility*, — NY3d — (2020) (decided today).

[3] Because petitioner had been released on parole and was then residing in SARA-compliant housing, the court converted petitioner's habeas corpus proceeding to an article 78 proceeding (*Negron*, 170 AD3d 12, 14 [3d Dept 2020]).

plainly and unequivocally refers to a person serving a sentence for an offense enumerated

in the statute ( 170 AD3d at 16).  Accordingly, the court held that:

> "the school-grounds restriction provided in Executive Law § 259-c (14) applies either to (1) an offender serving a sentence for one of the enumerated offenses whose victim was under 18 years old, or (2) an offender serving a sentence for one of the enumerated offenses who was designated a risk level three sex offender" (*id.*).

Petitioner was not serving a sentence for an enumerated offense, and therefore the

Appellate Division granted the petition to the extent of annulling that part of the Board's

determination that found petitioner subject to the mandatory school grounds restriction.

The Appellate Division granted respondent leave to appeal.

As the Third Department noted, in an earlier case raising the same issue, the Fourth

Department reached a different conclusion as to the scope of Executive Law § 259-c (14).

The Fourth Department held that the SARA-residency requirement applies in two separate

circumstances: (1) where the offender about to be released is serving a sentence for an

enumerated offense and the victim of the sex offense was under the age of eighteen; *or* (2)

where the offender has been adjudicated a risk level three sex offender regardless of the

underlying conviction (*see People ex rel. Garcia v Annucci*, 167 AD3d 199, 204 [4th Dept

2018]; *see also People ex rel. Rosario v Superintendent, Fishkill Corr. Facility*, 180 AD3d

920 [2d Dept 2020]).

"It is fundamental that a court, in interpreting a statute, should attempt to effectuate

the intent of the Legislature" (*Patrolmen's Benevolent Assn. of City of N.Y. v City of New

York*, 41 NY2d 205, 208 [1976]).  Generally, courts "look first to the statutory text, which

is the clearest indicator of legislative intent" (*Matter of New York County Lawyers' Assn.*

*v Bloomberg*, 19 NY3d 712, 721 [2012] [internal quotation marks omitted]).  "[W]here the language of a statute is clear and unambiguous, courts must give effect to its plain meaning" (*State of New York v Patricia II.*, 6 NY3d 160, 162 [2006] [internal quotation marks omitted]; *see Matter of Anonymous v Molik*, 32 NY3d 30, 37 [2018]).  The plain reading of the text, and the manner in which it was amended, support the conclusion that the offender must be serving a sentence for an enumerated offense for SARA's mandatory condition to apply.[4]

The crux of the dispute over the language of Executive Law § 259-c (14) is the meaning of the phrase "such person" in the clause "such person has been designated a level three sex offender."  As a rule, "'such' applies to the last antecedent, unless the sense of the passage requires a different construction" (*Sims Lessee v Irvine*, 3 Dallas [3 US] 425, 444 n* [1799]; *see Colon v Martin*, 35 NY3d 75, 78-79 [2020] ["the word 'such,' when used in a statute, must . . . refer to some antecedent, and will generally be construed to refer to the last antecedent in the context"]; Antonin Scalia and Bryan A. Garner, Reading Law: The Interpretation of Legal Texts, § 18 at 146 [2012]).  The parties agree that the relevant antecedent begins "a person"—the dispute is over whether the reference is to the general antecedent, "a person serving a sentence" or the particularized antecedent, "a person serving a sentence for [an enumerated offense]" (Executive Law § 259-c [14]; *see generally University Med. Ctr. of S. Nevada v Thompson*, 380 F3d 1197, 1199-1200 [9th

---

[4] To the extent respondent's interpretation finds any support in our characterization of a parallel SARA provision in *Matter of Gonzalez v Annucci* (32 NY3d at 474 n 5), we note that the issue was not before us on that appeal and, in any event, we are not bound by that dicta.

Cir 2004]). As the Ninth Circuit Court of Appeals noted in a case involving a similar issue of statutory construction, "[n]o bright-line rule governs this area of the English language. 'Such' can refer exclusively to preceding nouns and adjectives. It can also refer to surrounding verbs, adverbial phrases or other clauses. Context is typically determinative" (*United States v Krstic*, 558 F3d 1010, 1013 [9th Cir 2009]).

Reading the disputed language in context, it is clear that "such person" refers to the particularized antecedent (*see Littlefield v Mashpee Wampanoag Indian Tribe*, 951 F3d 30, 37 [1st Cir 2020] ["Normal usage in the English language would read the word 'such' as referring to the entire antecedent phrase"]). The provision begins (naturally enough for one that defines the Board's authority to determine "which inmates . . . serving a sentence may be released on parole") by identifying a group of offenders by the type of sentence being served (Executive Law § 259-c [14]). That group is further defined by additionally requiring that the victim of the crime was a minor or that the person who committed it had been designated a level three sex offender (*see id.*).[5] If the offender falls within the defined group, the Board must impose as a mandatory condition of parole "that *such sentenced offender* shall refrain from knowingly entering into or upon any school grounds" (*id*

---

[5] The parallel provision in Penal Law § 65.10 (4-a), which applies to those being released on probation or conditional discharge, has commas setting off the clause "or section 2.55.25, 255.26 or 255.27 of this chapter" so that a comma appears before the next clause "and the victim of such offense was under the age of eighteen or such person has been designated a level three offender" (*see also* Executive Law § 259-c [15] [similar punctuation in a statute requiring the Board to impose a condition restricting internet access on certain sex offenders]). That punctuation offers additional support for petitioner's reading (*see A.J. Temple Marble & Tile v Union Carbide Marble Care*, 87 NY2d 574, 581 [1996]).

[emphasis added]).  The reference to "such sentenced offender" reinforces the conclusion that the provision applies only to those serving a sentence for an enumerated offense.  The natural reading of the text is consistent with the purpose of the statute, namely, to identify those offenders who pose the highest risk to children among the population of offenders being released from sentences resulting from sex crime convictions (*see* L 200 ch 1 [protection afforded is to prohibit offenders from "entering upon school grounds or other facilities where children are cared for"]).

The history of the statute's amendment further supports this interpretation.  The mandatory school grounds condition of Executive Law § 259-c (14), when originally enacted as part of SARA in 2000, applied only to those offenders serving a sentence for an enumerated offense committed against a minor.  This would include some, but certainly not all, level three sex offenders.  In 2005, the legislature expanded the population subject to the mandatory school grounds condition by adding the language "such person has been designated a level three sex offender."  The logical conclusion is that the group subject to the condition was expanded to include all level three offenders serving a sentence for one of the enumerated crimes because the legislature determined that these offenders, like those who committed an enumerated offense against a minor, present a higher risk upon first being released into the community.  However, it does not necessarily follow that the legislature determined that all level three sex offenders must be subjected to the school grounds condition.

Respondent argues that the legislature intended all level three offenders to qualify for the mandatory school grounds condition because a level three designation requires a

finding that "the risk of repeat offense is high and there exists a threat to public safety" (Correction Law § 168-l [6][c]). Moreover, the "designation does not go stale" or "expire by its own terms" (*see* Correction Law § 168-n [1]), and therefore, a level three designation reflects current information that the offender runs a high risk of recidivism. This is not a basis for expanding the scope of the statute beyond the text enacted by the legislature, particularly where—as here—the restriction undisputedly applies only to offenders who are on parole, not to all level three offenders living in the community.[6] Further, as respondent acknowledges, the fact that the condition is not mandatory for all level three offenders still leaves the Board with discretion to impose the requirement.[7]

In sum, the 2005 amendment is properly read as making level three sex offender status, like an underage victim, an aggravating factor warranting mandatory imposition of the school grounds condition only where someone is released on parole from a sentence for one of the enumerated offenses.

The legislative history does not compel a different conclusion. According to the Sponsor's Memorandum, SARA was intended "[t]o prohibit sex offenders placed on conditional release or parole from entering upon school grounds or other facilities where

---

[6] SORA requires all level three sex offenders, like petitioner, to verify their residence with local law enforcement every 90 days (*see* Correction Law § 168-h [3]).

[7] Restricting the scope of the law to the highest risk offenders within a high-risk population is also consistent with the legislature's awareness of "the challenges sex offenders faced upon leaving prison in light of the shortages of affordable housing" (*People v Diack*, 24 NY3d at 683 [discussing chapter 568 enacted in 2008]). Those challenges are exacerbated by restricting sex offenders who are on probation or parole from living within 1,000 feet of school grounds (*see* Gov Mem in Support, Bill Jacket, L 2008, ch 568 at 6, 2008 Legis Ann at 388; s*ee also People ex rel. McCurdy v Warden, Westchester County Corr. Facility*, — NY3d — [2020] [decided today]).

the individual has been designated as a level three sex offender" (Sponsor's Mem, Bill Jacket, L 2005, ch 544 at 4).  The memorandum also notes that the bill would amend SARA "to require that, as a condition of parole or conditional release, . . . individuals designated as level three sex offenders refrain from entering upon school grounds or other facilities where children are cared for" (*id.*).  The general references to a level three sex offender designation, without qualification, may appear to favor respondent's interpretation, but can also be read as assuming conviction for one of the enumerated offenses.  It is far more consistent with the legislative intent to read the language as a shorthand reference to an aggravating factor than to read it as expanding the statute to cover any level three sex offender regardless of the underlying conviction, particularly as any reference to such a significant expansion to the scope of the mandatory condition is conspicuously absent from the legislative history.  Respondent's reliance on various letters commenting on the bill is even less persuasive.  There is simply no indication in the legislative history that the legislature intended anything beyond the meaning obtained by examining the statute's plain language, namely, that the offender must be serving a sentence for an enumerated offense and be a level three sex offender in order for the mandatory condition to apply.  Accordingly, the order of the Appellate Division should be affirmed, without costs.

FAHEY, J. (dissenting):

The 2005 amendment to Executive Law § 259-c (14) is not a model of clarity. Inasmuch as the language of the amended statute is reasonably susceptible to more than one interpretation, and the legislative history clearly supports the interpretation urged by

respondent, I would conclude that all level three sex offenders regardless of the offense for which they are serving a sentence are subject to the mandatory school-grounds restriction. I therefore respectfully dissent.

The Fourth Department has held that Executive Law § 259-c (14) is ambiguous with respect to whether it applies to all level three sex offenders released to community supervision or only to those serving a sentence for an enumerated offense (*see People ex rel. Garcia v Annucci*, 167 AD3d 199, 203 [4th Dept 2018], *lv dismissed* 32 NY3d 1192 [2019]).  The Second Department has also concluded that the statute is "amenable to competing interpretations" (*People ex rel. Rosario v Superintendent, Fishkill Corr. Facility*, 180 AD3d 920, 922 [2d Dept 2020]).  I agree with the majority that there is no "bright-line rule" governing the interpretation of the word "such" (*see* majority op at 6; *United States v Krstic*, 558 F3d 1010, 1013 [9th Cir 2009], *cert denied* 558 US 917 [2009]; *see also Hogar Agua y Vida en el Desierto, Inc. v Suarez-Medina*, 36 F3d 177, 185-186 [1st Cir 1994]).  I agree with the Second and Fourth Departments, however, that there is more than one rational way to interpret the statutory phrase "such person" in this context. The post-amendment structure of the provision, which sets forth three criteria for application of the school-grounds restriction without punctuation indicating their relationship to each other, invites confusion.  Due to that ambiguity, and given that our role in a case of statutory interpretation is always to discern the intent of the legislature, I am compelled to turn to the legislative history (*see generally Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270, 286 [2009]).

On that issue, I again agree with the Second and Fourth Departments that the

legislative history "strongly supports respondents' interpretation of the statute" (*Garcia*, 167 AD3d at 203; *see Rosario*, 180 AD3d at 922).  Executive Law § 259-c (14), enacted as a part of the Sexual Assault Reform Act (SARA) of 2000, originally applied its mandatory school-grounds restriction only to those offenders serving a sentence for an enumerated offense against a minor (*see* L 2000, ch 1, § 8).  The legislature amended that subdivision in 2005 by adding the language "or such person has been designated a level three sex offender pursuant to subdivision six of section 168-1 of the correction law," thereby expanding the class of persons to whom the mandatory school-grounds provision applies (L 2005, ch 544, § 2).

As reflected in the Assembly Memorandum in support, the legislature's stated purpose in passing the 2005 amendment was to "prohibit sex offenders placed on conditional release or parole from entering upon school grounds or other facilities where the individual has been designated as a level three sex offender" (NYS Assembly Mem in Support, Bill Jacket, L 2005, ch 544, at 4).  In line with this purpose, the memorandum indicated that the amendment would require, "as a condition of parole or conditional release, that individuals designated as level three sex offenders refrain from entering upon school grounds," referring to level three sex offenders generally and without qualifiers (*id.*).  The justification for the bill was stated as "a need to prohibit those sex offenders who are determined to pose the most risk to children from entering upon school grounds or other areas where children are cared for" (*id.*).

Although I agree with my colleagues in the majority that the letters from other agencies commenting on the bill do not establish the legislature's intent (*see* majority op

at 9), it is notable that, consistent with the legislative statements, stakeholders contemporaneously believed that the 2005 amendment extended the mandatory school-grounds restriction to all level three sex offenders. The New York Civil Liberties Union, which opposed the bill, protested that it would extend the SARA school-grounds restriction to "all persons designated 'Level Three' sex offenders" (Letter from NYCLU, Aug. 18, 2005, Bill Jacket, L 2005, ch 544 at 18), reflecting its view that the statute was not limited to those level three sex offenders sentenced for an enumerated offense. A letter from the State Education Department stated that the bill would "require, as a condition of parole or conditional release, that *any* individual designated as a level three sex offender is prohibited from entering school grounds or any other facility or institution primarily used for the care or treatment of children" (Letter from St Educ Dept, July 8, 2005, Bill Jacket, L 2005, ch 544 at 6 [emphasis added]). The Unified Court System shared this view, stating in a letter that the office had no objection to the bill that would "bar level three sex offenders who have been placed on conditional release or parole from entering upon school grounds or other facilities where children are cared for" (Letter from Unified Ct Sys, July 6, 2005, Bill Jacket, L 2005, ch 544 at 10). These letters demonstrate a commonly held view of the scope of the amendment at the time of its enactment that is consistent with the legislative intent reflected in the Assembly Memorandum.

In summary, this legislative history supports the conclusion that both the legislature and the commentators understood that the amendment would expand the SARA school-grounds restriction to all level three sex offenders. There is no indication in that history that the legislature intended the 2005 amendment to apply to only those level three sex

offenders serving a sentence for an enumerated offense.

Moreover, the level three designation is reserved for those sex offenders that pose the highest risk of re-offense. Level three sex offenders are categorized as such if their "risk of repeat offense is high and there exists a threat to the public safety" (Correction Law § 168-l [6] [c]). Level three sex offenders retain that designation for life, unless they successfully petition for a downward modification (*see* Correction Law §§ 168-h [2]; 168-o [2]). Level three sex offenders therefore are classified as having a high risk of re-offense and posing a threat to public safety for life, even if they later commit crimes that are not sex offenses. The legislature rationally determined that all level three sex offenders released to community supervision, even those not serving a sentence for an enumerated offense, should be subject to the mandatory school-grounds restriction, as opposed to singling out only a subset of level three offenders serving a sentence for an enumerated offense.

Ultimately, I agree with the Second Department that this debate over the legislature's intent is largely the result of the statute's "inartful wording" (*Rosario*, 180 AD3d at 922). I cannot agree that the only rational interpretation of the statute is the majority's interpretation. The ambiguity in the statutory language is resolved by examining the legislative history, which clearly supports respondent's interpretation. I respectfully dissent.

Order affirmed, without costs.  Opinion by Judge Garcia.  Judges Rivera, Stein, Wilson and Feinman concur.  Judge Fahey dissents in an opinion in which Chief Judge DiFiore concurs.


Decided November 23, 2020