People ex rel. Suarez v Superintendent, Livingston Corr. Facility (2021 NY Slip Op 00705)





People ex rel. Suarez v Superintendent, Livingston Corr. Facility


2021 NY Slip Op 00705


Decided on February 5, 2021


Appellate Division, Fourth Department


Bannister, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 5, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, PERADOTTO, LINDLEY, AND BANNISTER, JJ.


755 KAH 19-02190

[*1]THE People of the State of New York ex rel. Edwin Suarez, PETITIONER-APPELLANT,
v
SUPERINTENDENT, LIVINGSTON CORRECTIONAL FACILITY AND NEW YORK STATE BOARD OF PAROLE, RESPONDENTS-RESPONDENTS. 






THE LEGAL AID SOCIETY, NEW YORK CITY (ELON HARPAZ OF COUNSEL), FOR PETITIONER-APPELLANT.
LETITIA JAMES, ATTORNEY GENERAL, ALBANY (ROBERT M. GOLDFARB OF COUNSEL), FOR RESPONDENTS-RESPONDENTS. 


Bannister, J.
 Appeal from a judgment of the Supreme Court, Livingston County (Robert B. Wiggins, A.J.), dated May 3, 2019 in a habeas corpus proceeding. The judgment denied the petition. 
It is hereby ORDERED that the judgment so appealed from is reversed on the law without costs, the habeas corpus proceeding is converted to a CPLR article 78 proceeding in the nature of mandamus and the petition is granted to the extent of annulling that part of the determination of the Board of Parole imposing upon petitioner the school grounds mandatory condition set forth in Executive Law § 259-c (14).
Opinion by Bannister, J.
Petitioner was convicted upon his plea of guilty of attempted rape in the second degree (Penal Law §§ 110.00, 130.30 [1]). At sentencing, he was adjudicated a youthful offender and was sentenced to a term of probation. Petitioner violated his conditions of probation and was resentenced to a term of incarceration. He was eventually granted parole by the Board of Parole, which issued a determination imposing various conditions of release, including, inter alia, the mandatory condition that he refrain from knowingly entering school grounds in compliance with the Sexual Assault Reform Act (SARA) (L 2000, ch 1, as amended by L 2005, ch 544; see Executive Law § 259-c [14]). Specifically, the conditions provided that petitioner would not be released "until a residence [was] developed and it [was] verified that such address [was] located outside the Penal Law definition of school grounds and [was] approved by the Department." Petitioner was unable to obtain a SARA-compliant residence and, as a result, remained housed at the correctional facility despite being determined by the Board of Parole to be ready for release to parole supervision.
Petitioner commenced this habeas corpus proceeding pursuant to CPLR article 70 contending that the school grounds mandatory condition of Executive Law § 259-c (14) did not apply to him because he was adjudicated a youthful offender and thus that he was entitled to immediate release from custody. At the time he filed his petition, he had been housed at the correctional facility an additional two years beyond his release date. Supreme Court denied the petition, concluding that SARA was applicable regardless of whether a person is adjudicated a youthful offender so long as he or she served a sentence for an enumerated sex crime and the victim was under the age of 18. Petitioner appeals, and we reverse.
As an initial matter, this Court learned at oral argument on this appeal that petitioner was released from the correctional facility and is now residing in a SARA-compliant residence. As such, habeas corpus relief is not available to him (see People ex rel. Negron v Superintendent, [*2]Woodbourne Corr. Facility, 170 AD3d 12, 14 [3d Dept 2019], affd 36 NY3d 32 [2020]). Nonetheless, because this appeal concerns a condition of petitioner's release to parole, we convert the proceeding to one pursuant to CPLR article 78 (see id.).
The primary statute involved in this case is Executive Law § 259-c (14), which provides in relevant part:
"[N]otwithstanding any other provision of law to the contrary, where a person serving a sentence for an offense defined in [Penal Law articles 130, 135 or 263 or Penal Law §§ 255.25, 255.26 or 255.27] and the victim of such offense was under the age of [18] at the time of such offense or such person has been designated a level three sex offender pursuant to [Correction Law § 168-l (6)], is released on parole or conditionally released pursuant to [Executive Law § 259-c (1) or (2)], the [Board of Parole] shall require, as a mandatory condition of such release, that such sentenced offender shall refrain from knowingly entering into or upon any school grounds, as that term is defined in [Penal Law § 220.00 (14)], . . . while one or more of such persons under the age of [18] are present . . . ."
The Penal Law defines "school grounds," in relevant part, as:
"any area accessible to the public located within one thousand feet of the real property boundary line comprising any such school or any parked automobile or other parked vehicle located within one thousand feet of the real property boundary line comprising such school" (§ 220.00 [14] [b]).
Further, Penal Law § 65.10 (4-a) (a) sets forth the mandatory conditions of probation or conditional discharge for sex offenders and mirrors much of the language of Executive Law § 259-c (14), providing in relevant part:
"When imposing a sentence of probation or conditional discharge upon a person convicted of an offense defined in [Penal Law articles 130, 235 or 263 or Penal Law §§ 255.25, 255.26 or 255.27], and the victim of such offense was under the age of [18] at the time of such offense or such person has been designated a level three sex offender pursuant to [Correction Law § 168-l (6)], the court shall require, as a mandatory condition of such sentence, that such sentenced offender shall refrain from knowingly entering into or upon any school grounds, as that term is defined in [Penal Law
§ 220.00 (14)], . . . while one or more of such persons under the age of [18] are present" (emphasis added).
Notably, none of the aforementioned statutory provisions expressly restricts the location of where a person covered by those provisions may reside, but the definition of "school grounds" under the Penal Law necessarily operates to restrict places where such a person may live and travel (see People v Diack, 24 NY3d 674, 682 [2015]). The Court of Appeals has stated that "[t]he practical effect is that any sex offender who is subject to the school grounds mandatory condition is unable to reside within 1,000 feet of a school or facility as defined in Penal Law § 220.00 (14) (b)" (id.).
In determining whether petitioner is subject to the school grounds mandatory condition, we begin with an analysis of the statutory text of Executive Law § 259—c (14). "It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature" (Patrolmen's Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208 [1976]; see Matter of Anonymous v Molik, 32 NY3d 30, 37 [2018]). "The 'literal language of a statute' is generally controlling unless 'the plain intent and purpose of a statute would otherwise be defeated' . . . Where 'the language is ambiguous or where a literal construction would lead to absurd or unreasonable consequences that are contrary to the purpose of the [statute's] enactment,' courts may '[r]esort to legislative history' " (Anonymous, 32 NY3d at 37).
In this case, the determination whether petitioner is subject to the school grounds mandatory condition hinges on whether, "notwithstanding any other provision of law to the contrary," petitioner was "a person serving a sentence for an offense defined in [Penal Law articles 130, 135 or 263 or Penal Law §§ 255.25, 255.26 or 255.27] and the victim of such offense was under the age of [18] at the time of such offense" (Executive Law § 259-c [14]). Here, petitioner was serving a sentence for an enumerated offense and his victim was under the age of 18 at the time of the offense. Furthermore, the phrase " 'notwithstanding any provision of [*3]law to the contrary' [is] the verbal formulation frequently employed for legislative directives intended to preempt any other potentially conflicting statute, wherever found in the State's laws" (People v Mitchell, 15 NY3d 93, 97 [2010]; see Matter of Niagara County v Power Auth. of State of N.Y., 82 AD3d 1597, 1601 [4th Dept 2011], lv dismissed in part and denied in part 17 NY3d 838 [2011]). Thus, at first blush, it appears that petitioner is covered by the statute.
However, the question then becomes whether the literal construction of Executive Law § 259-c (14) results in an absurd or unreasonable consequence that is contrary to the legislative intent. Significantly, nowhere does the statute expressly state whether the legislature intended to include persons who were adjudicated youthful offenders. Additionally, as noted, the school grounds mandatory condition as it pertains to residency is not expressly found in the statute, but is one that was interpreted as existing by the courts from an analysis of the Penal Law (see Diack, 24 NY3d at 682). Thus, to answer the question, we must examine the legislative history of Executive Law § 259-c (14).
In 2000, the legislature passed and the Governor signed SARA, the purpose of which was to "increase[] penalties against sex offenders, enhance[] sexual assault victim services, and close[] existing loopholes related to sex crime prosecution" (Budget Report on Bills, Bill Jacket, L 2000, ch 1). As relevant here, the legislature amended Penal Law § 65.10 and at the same time added Executive Law § 259-c (14), which set forth the school grounds mandatory condition (see L 2000, ch 1, §§ 7, 8). In 2005, the legislature extended the application of the school grounds mandatory condition to certain sex offenders designated a level three risk pursuant to Correction Law
§ 168-l (6) and adopted the broad definition of "school grounds" set forth in Penal Law § 220.00 (14) (see L 2005, ch 544, § 2; see also Executive Law § 259-c [14]).
Notably, a review of the legislative history of SARA reveals that the legislature intended to impose the school grounds mandatory condition on sex offenders (see Budget Report on Bills, Bill Jacket, L 2000, ch 1 ["probibit[s] child sex offenders from entering school grounds"]). A "sex offender," as defined in the Correction Law, "includes any person who is convicted of any of the [enumerated offenses]" (§ 168-a [1] [emphasis added]). A "sex offense" is defined as "a conviction of or a conviction of an attempt to commit [an enumerated crime]" (§ 168-a [2] [emphasis added]). Additionally, the school grounds mandatory condition as set forth in Penal Law § 65.10 (4-a) (a) expressly applies only to those persons convicted of the enumerated offenses.
When a sentencing court adjudicates a defendant a youthful offender, however, the conviction is "deemed vacated and replaced by a youthful offender finding" (CPL 720.20 [3]). CPL 720.35 (1) states that a youthful offender adjudication "is not a judgment of conviction for a crime or any other offense," which is in keeping with the "legislative desire not to stigmatize youths [adjudicated youthful offenders] . . . with criminal records triggered by hasty or thoughtless acts" (People v Drayton, 39 NY2d 580, 584 [1976], rearg denied 39 NY2d 1058 [1976]). Thus, by definition, a youthful offender is not a convicted sex offender and does not fall within the category of persons intended to be restricted under SARA.
To be sure, SARA was added to enhance the penalties already imposed on certain sex offenders pursuant to the Sex Offender Registration Act (SORA) (Correction Law § 168 et seq.), which, like SARA, refers to conditions imposed on sex offenders released from prison (see Budget Report on Bills, Bill Jacket, L 2000, ch 1). While SORA's public notification and registration requirements carry a greater stigma than SARA's school ground mandatory condition, that mandatory condition was enacted for the purpose of protecting children from "sexual predators" and "limiting access" to "defined public areas where children congregate" (Matter of Williams v Department of Corr. & Community Supervision, 136 AD3d 147, 153 [1st Dept 2016], appeal dismissed 29 NY3d 900 [2017]). Nothing in the legislative history of SARA indicates that the mandatory condition was intended to be imposed on youthful offenders. Rather, the imposition of the school grounds mandatory condition on a youthful offender would run contrary to the purpose of youthful offender treatment, which is to avoid " 'the stigma and practical consequences which accompany a criminal conviction' " (People v Francis, 30 NY3d 737, 749 [2018]).
Recently, in Negron (36 NY3d at &mdash, 2020 NY Slip Op 06935, *1), the Court of Appeals [*4]considered the other category of persons subject to the school grounds mandatory condition in Executive Law § 259-c (14), i.e., those persons "designated a level three sex offender pursuant to [Correction Law § 168-l (6)]." While the Court applied the plain language of that provision, the interpretation of that plain language resulted in a narrow application of the statute (Negron, 36 NY3d at &mdash, 2020 NY Slip Op 06935, *2-3). In other words, the Court determined that the term "such person" did not apply to all level three sex offenders despite the fact that level three sex offenders are categorized as such if their "risk of repeat offense is high and there exists a threat to the public safety" (Correction Law § 168-l [6] [c]; see Negron, 36 NY3d at &mdash, 2020 NY Slip Op 06935, *3-4). Rather, the Court interpreted the statute to be limited to only those level three sex offenders who committed an enumerated crime (Negron, 36 NY3d at &mdash, 2020 NY Slip Op 06935, *2). In doing so, the Court recognized that the purpose of SARA was "to identify those offenders who pose the highest risk to children among the population of offenders being released from sentences resulting from sex crime convictions" (see id. at *3 [emphasis added]). Certainly, a youth who has received the benefit of a youthful offender adjudication cannot fall within the category of offenders posing the highest risk to children that was intended to be covered under SARA.
Thus, we conclude that the literal construction of the plain statutory language of Executive Law § 259-c (14) in this case and, in particular, interpreting that provision to apply to a youthful offender because he or she is simply "serving a sentence" for an enumerated crime involving a victim under the age of 18 would result in the broad application of the statute to persons unintended to be covered by the legislature. It cannot be said that youthful offenders fall within the class of individuals the legislature intended to subject to the SARA school grounds mandatory condition.
Accordingly, we conclude that the judgment should be reversed and the petition granted to the extent of annulling that part of the determination of the Board of Parole that imposed upon petitioner, a youthful offender, the school grounds mandatory condition set forth in Executive Law § 259-c (14).
Peradotto and Lindley, JJ., concur with Bannister, J.; Whalen, P.J., dissents and votes to modify in accordance with the following opinion in which Centra, J., concurs: We respectfully dissent inasmuch as we disagree with the conclusion of the majority that petitioner is not subject to the school grounds mandatory condition set forth in the Sexual Assault Reform Act (SARA) (L 2000, ch 1, as amended by L 2005, ch 544; see Executive Law § 259-c [14]; People v Diack, 24 NY3d 674, 682 [2015]).
Petitioner was convicted of attempted rape in the second degree (Penal Law §§ 110.00, 130.30 [1]) for the sexual assault of a 13-year-old victim. He was adjudicated a youthful offender and initially sentenced to a term of probation. He violated the conditions of his probation and, as a result, was resentenced on the original sex offense to an indeterminate term of incarceration with a maximum of 3¼ years (see § 60.02 [2]; CPL 410.70 [5]). Petitioner was subsequently granted parole subject to, among other things, his compliance with Executive Law § 259-c (14), which states as relevant:
"notwithstanding any other provision of law to the contrary, where a person serving a sentence for an offense defined in article one hundred thirty . . . of the penal law and the victim of such offense was under the age of eighteen at the time of such offense . . . is released on parole or conditionally released pursuant to subdivision one or two of this section, the board shall require, as a mandatory condition of such release, that such sentenced offender shall refrain from knowingly entering into or upon any school grounds, as that term is defined in subdivision fourteen of section 220.00 of the penal law, or any other facility or institution primarily used for the care or treatment of persons under the age of eighteen while one or more of such persons under the age of eighteen are present."
That provision thus "identif[ies] a group of offenders by the type of sentence being served" and further defines that group "by additionally requiring that the victim of the crime was a minor" (People ex rel. Negron v Superintendent, Woodbourne Corr. Facility, 36 NY3d &mdash, &mdash, 2020 NY Slip Op 06935, *2 [2020]). As the majority concedes, petitioner clearly falls within that narrowly defined group. Contrary to the conclusion of the majority, however, applying the literal language of the statute here would not defeat the legislative intent underlying the separate [*5]statutory youthful offender scheme (see generally Matter of Anonymous v Molik, 32 NY3d 30, 37 [2018]). The legislature provided for the replacement of a conviction with a youthful offender adjudication in certain circumstances based on a "desire not to stigmatize youths between the ages of 16 and 19 with criminal records triggered by hasty or thoughtless acts which, although crimes, may not have been the serious deeds of hardened criminals" (People v Drayton, 39 NY2d 580, 584 [1976], rearg denied 39 NY2d 1058 [1976]; see CPL 720.20 [3]). Youthful offender treatment, however, does not exempt a youthful offender from the imposition of a punitive sentence, including a sentence of incarceration, when warranted by the youthful offender's conduct (see Penal Law § 60.02).
Here, petitioner's conduct warranted a sentence of incarceration and his release to parole is a continuation of his service of that sentence (see Penal Law § 70.40 [1] [a]). The legislature determined that the school grounds mandatory condition is a statutorily required part of a specified sex offender's service of a sentence in the community, but that provision does not create a permanent stigma that will continue to limit that offender following the completion of the sentence. Thus, applying the plain language of Executive Law § 259-c (14) is not contrary to the legislature's intent to relieve a youthful offender of a public criminal record or to provide that offender an opportunity for a fresh start once a sentence has been completed (see generally People v Francis, 30 NY3d 737, 748 [2018]). In the absence of any ambiguity that would permit our divergence from the plain language of Executive Law § 259-c (14), the issue whether a youthful offender serving a sentence for a specified sex offense should be exempted from the school grounds mandatory condition set forth in SARA is one for the legislature to expressly address in the first instance. We would therefore modify the judgment by converting the proceeding from one pursuant to CPLR article 70 to one pursuant to CPLR article 78 because petitioner has been released from custody to a SARA-compliant residence, and we would otherwise affirm (see generally People ex rel. Negron v Superintendent, Woodbourne Corr. Facility, 170 AD3d 12, 14 [3d Dept 2019], affd 36 NY3d — [2020]).
Entered: February 5, 2021
Mark W. Bennett
Clerk of the Court