# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 46
The People &c. ex rel. E.S.,
      Respondent,
    v.
Superintendent, Livingston
Correctional Facility et al.,
      Appellants.

Jonathan D. Hitsous, for appellants.
Marquetta Christy, for respondent.

HALLIGAN, J.:

The Sexual Assault Reform Act (SARA) imposes a mandatory restriction

prohibiting a person who is "serving a sentence" for an enumerated offense against a minor

victim and is released on parole from coming within 1,000 feet of school grounds (*see*

- 1 -

Executive Law § 259-c [14]; L 2000, ch 1).  The question presented in this appeal is whether that restriction applies to youthful offenders.  We hold that it does.

Petitioner pleaded guilty to the attempted second-degree rape of a 13-year-old victim (*see* Penal Law §§ 130.30 [1]; 110.00).  Petitioner was 18 years old at the time of the offense and was adjudicated a youthful offender (*see* CPL 720.20 [3]).  He was initially sentenced to a 10-year period of probation, but after violating the terms of his probation, he was resentenced to an indeterminate term of imprisonment.  The Board of Parole granted petitioner an open date (that is, the earliest possible release date) of August 2018, subject to numerous conditions of release.  As relevant here, petitioner was required to abide by SARA's school grounds condition and thus would not be released until he identified a SARA-compliant residence.  Unable to obtain suitable housing, petitioner remained imprisoned.

In March 2019, petitioner brought this CPLR article 70 habeas corpus proceeding. He asserted that as a youthful offender, he was not subject to SARA's school grounds condition and thus was unlawfully being held in prison past his parole eligibility date. Supreme Court denied the petition and dismissed the proceeding, holding that section 259-c (14), by its plain language, applied to any individual "serving a sentence" for an enumerated offense, including a youthful offender.

The Appellate Division reversed, with two Justices dissenting (193 AD3d 57 [4th Dept 2021]).[*] The Court held that while the statutory language at issue appeared to cover youthful offenders, nothing in SARA's legislative history indicated an intent to impose the school grounds condition on youthful offenders. The dissent noted the majority's concession that petitioner fell within the literal language of section 259-c (14) and took issue with the view that applying the plain language would defeat the legislative intent underlying the youthful offender scheme (*see* 193 AD3d at 64-65).

Respondents—the Superintendent of the Livingston Correctional Facility and the New York State Board of Parole—appealed as of right pursuant to CPLR 5601 (a), based on the two-Justice dissent. We now reverse.

SARA was enacted in 2000 and includes a mandatory school grounds condition imposed on the parole or conditional release of a particular group of offenders. Specifically, as relevant here, Executive Law § 259-c (14) provides that:

> "notwithstanding any other provision of law to the contrary, where a person *serving a sentence* for an [enumerated] offense . . . and the victim of such offense was under the age of eighteen

---

[*] Upon being informed at oral argument that petitioner had been released from custody to SARA-compliant housing, the Appellate Division converted the habeas proceeding to a CPLR article 78 proceeding "because th[e] appeal concern[ed] a condition of petitioner's release to parole" (*see* 193 AD3d at 59). In fact, petitioner had reached the maximum expiration date of his sentence during the pendency of the Appellate Division appeal and was no longer subject to conditions of parole supervision, rendering that appeal moot by the time it was decided. However, the issue presented is substantial and novel, appears likely to be repeated, and is capable of evading review given the relatively short indeterminate prison terms applicable to youthful offenders (*see* CPL 720.20 [1] [a]; Penal Law §§ 60.02 [2], 70.00; *Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714-715 [1980]). Accordingly, the proceeding should be converted to a declaratory judgment action (*see People ex rel. Johnson v Superintendent, Adirondack Corr. Facility*, 36 NY3d 187, 196 [2020]).

at the time of such offense . . . is released on parole . . . the board shall require, as a mandatory condition of such release, that such sentenced offender shall refrain from knowingly entering into or upon any school grounds, as that term is defined in" Penal Law § 220.00 (14) (emphasis added).

This provision, in tandem with the Penal Law definition of "[s]chool grounds," means that an individual subject to SARA's school grounds condition may not knowingly come within 1,000 feet of school property (*see* Penal Law § 220.00 [14]; *People v Diack*, 24 NY3d 674, 682 [2015]).

There is no dispute that petitioner committed an enumerated sex offense against a minor victim. Petitioner argues that as a youthful offender, he is nonetheless exempt from SARA because a youthful offender is not "serving a sentence" for purposes of section 259-c (14). The plain language of this provision, along with numerous other statutory references to the "sentence" that a youthful offender serves, foreclose this interpretation.

"It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature" (*Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 41 NY2d 205, 208 [1976]). "As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language [of the statute] itself, giving effect to the plain meaning thereof" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]). "The 'literal language of a statute' is generally controlling unless 'the plain intent and purpose . . . would otherwise be defeated[,]'" or "'where a literal construction would lead to absurd or unreasonable consequences that are contrary to the purpose of the [statute's] enactment'" (*Matter of*

*Anonymous v Molik*, 32 NY3d 30, 37 [2018] [citations omitted]).  Here, we cannot say that the literal construction of section 259-c (14) leads to absurd or unreasonable consequences.

Petitioner's reading of section 259-c (14) to exclude youthful offenders rests on other provisions in the youthful offender statutes and the Criminal Procedure Law. Petitioner notes that when an eligible youth is adjudicated a youthful offender, the conviction is "deemed vacated and replaced by a youthful offender finding" (CPL 720.20 [3]).  That finding, along with the "youthful offender sentence," comprises the youthful offender adjudication (CPL 720.10 [6]).  In line with the legislature's goal of shielding youthful offenders from many of the consequences of an adult criminal conviction, the youthful offender statute instructs that "[a] youthful offender adjudication is not a judgment of conviction for a crime or any other offense" (CPL 720.35 [1]).  Separately, the Criminal Procedure Law defines a "sentence" as "the imposition and entry of sentence upon a conviction" (CPL 1.20 [14]).  Drawing from these provisions, petitioner contends that because there is no conviction under CPL 720.35 (1), there can be no "sentence" under CPL 1.20 (14), and thus a youthful offender is not "serving a sentence" for purposes of section 259-c (14).

Critically, this reading cannot be squared with the plain language of section 259-c. Section 259-c (1) authorizes the Board of Parole to determine when and under what conditions "incarcerated individuals serving an indeterminate . . . sentence of imprisonment may be released on parole."  If the term "sentence" does not include youthful offenders, there would be no express statutory authorization to release them on parole at all—a result

that would be unduly harsh and irreconcilable with the goal of facilitating a "fresh start" for youthful offenders (*see generally People v Rudolph*, 21 NY3d 497, 501 [2013]).

Nor can petitioner's interpretation be reconciled with numerous references to "sentence" in the youthful offender statutes. For example, a "youthful offender adjudication" is deemed "completed by imposition and entry of the youthful offender sentence" (CPL 720.10 [6]; *see also* CPL 720.20 [1] ["at the time of pronouncing sentence the court must determine whether or not the eligible youth is a youthful offender"]). A "[y]outhful offender sentence" is defined as "the sentence imposed upon a youthful offender finding" (CPL 720.10 [5]). When an underlying conviction is "deemed vacated and replaced by a youthful offender finding . . . the court must sentence the defendant pursuant to section 60.02 of the penal law" (CPL 720.20 [3]). Section 60.02, in turn, uses the term "sentence" 11 times in setting forth the parameters of how a person is to be sentenced pursuant to a youthful offender finding (*see* Penal Law § 70.00 [2] [e], [3] [b]; *see also* Penal Law § 65.00 [3]). Given the repeated use of the term "sentence" in relation to youthful offenders and the use of that same term in section 259-c (1) and 259-c (14), we cannot conclude that the legislature thought youthful offenders do not serve a "sentence," or meant to exclude youthful offenders from the school grounds condition on this basis.

To be sure, we have on occasion imported a definition from the Criminal Procedure Law to give meaning to terms in other statutes, and petitioner asks us to do that here. "'[W]here the same word or group of words is used in . . . different statutes, if the acts are similar in intent and character the same meaning may be attached to them'" (*People v Duggins*, 3 NY3d 522, 528 [2004], quoting McKinney's Cons Laws of NY, Book 1,

Statutes § 236, at 401-402; *see also People v Montilla*, 10 NY3d 663, 668 [2008] [importing CPL definition of "conviction" to the Penal Law]; *Matter of Gunning v Codd*, 49 NY2d 495, 499-500 [1980] [importing CPL definition of "conviction" to the Public Officers Law]).

Not only are there meaningful differences between the character and purposes of the CPL and those of the Executive Law, but importing the CPL's definition of "sentence" into section 259-c (14) would render incoherent the portions of section 259-c noted above and the repeated statutory references to the "sentence" imposed on a youthful offender. This is "sound reason" enough to differentiate between the provisions (*see Gunning*, 49 NY2d at 498; McKinney's Cons Laws of NY, Book 1, Statutes § 236, Comment [any presumption that the same meaning attaches to a word used in different statutes "may be rebutted by the surrounding circumstances and other indications of legislative intent"]).

The legislative history of CPL 1.20 (14) is consistent with our conclusion. It indicates that the term "sentence" was defined in order to clarify the "uncertain meaning" of the term "conviction" and to distinguish between a "conviction," a "sentence," and a "judgment" for purposes of appellate and postconviction review (*see* Staff Comment of Temp St Commn on Rev of Penal Law & Crim Code, 1967 Proposed NY CPL 1.20 at 26-27). The legislative history suggests no similar intent to establish a single controlling meaning for the term "sentence" across other statutory provisions (*see id.*).

Petitioner also argues that applying the mandatory school grounds condition to youthful offenders eligible for parole would be inconsistent with the legislature's decision to exempt from that condition those youthful offenders sentenced to probation or a

conditional discharge. But that different treatment arises because section 259-c (14), which imposes the school grounds condition on parole-eligible offenders, and Penal Law § 65.10 (4-a), which does the same for those sentenced to probation or conditional discharge, use different triggering language (*compare* Executive Law § 259-c [14] [applying condition to a person "serving a sentence"] *with* Penal Law § 65.10 [4-a] [applying condition to individuals "convicted of" an enumerated offense]). Given that these provisions were enacted at the same time (L 2000, ch 1) but use different language, we presume the two phrases have different meanings (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 236, Comment [when "the Legislature uses unlike terms in different parts of a statute it is reasonable to infer that a dissimilar meaning is intended"]; *Batavia Townhouses, Ltd. v Council of Churches Hous. Dev. Fund Co., Inc.*, 38 NY3d 467, 474 [2022]). Moreover, the legislature reasonably could have elected to relieve youthful offenders subject to probation from the mandatory condition, while not doing so for those subject to imprisonment. Offenders who receive a probationary sentence will presumably pose less risk to the community as compared to those whose offenses warrant incarceration, given the factors a court may consider when imposing sentence (*see* Penal Law §§ 70.80 [2]; 1.05).

Along similar lines, petitioner argues that SARA's school grounds condition should be read coextensively with the Sex Offender Registration Act (SORA). SORA applies to "[s]ex offender[s]" who are "convicted of" an enumerated sex offense (Correction Law § 168-a [1]), and a youthful offender has no "conviction" pursuant to CPL 720.20 (3). But the legislature employed different language in section 259-c (14), applying the school

grounds condition to all persons "serving a sentence" for an enumerated offense. While SARA's legislative history does not directly address the reason for imposing a school grounds condition but not registration and notification requirements on youthful offenders, imposing the latter would be incompatible with the goal of shielding youthful offenders from the stigma of a criminal record and affording them an opportunity for a new beginning (*see Rudolph*, 21 NY3d at 501; *see also People v Drayton*, 39 NY2d 580, 584 [1976] [the youthful offender statutes reflect "a legislative desire not to stigmatize youths between the ages of 16 and 19 with criminal records triggered by hasty or thoughtless acts which, although crimes, may not have been the serious deeds of hardened criminals"]).

The Appellate Division acknowledged that section 259-c (14) applies to youthful offenders on its face. That Court nevertheless took the view that giving effect to SARA's literal terms would not further SARA's legislative intent and would be inconsistent with the objectives of the youthful offender statutes. On those latter points, we disagree. The purpose of the school grounds condition is to bar offenders who pose the "highest risk to children" from entering school grounds (*People ex rel. Negron v Superintendent, Woodbourne Corr. Facility*, 36 NY3d 32, 38 [2020]). Certainly, someone accorded youthful offender status can fall into this category. While we appreciate that the consequences of imposing the school grounds condition may be severe, the legislature has authorized the imposition of other long-term consequences, such as a lengthy probationary term, on youthful offenders (*see People v Teri W.*, 31 NY3d 124 [2018]). And once the youthful offender serves their sentence, the school grounds condition is lifted and the youthful offender will receive the "fresh start" provided to them by statute (*id.* at 129).

Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, without costs, the proceeding converted to a declaratory judgment action and judgment granted in accordance with this opinion.

Order insofar as appealed from reversed, without costs, proceeding converted to a declaratory judgment action and judgment granted in accordance with the opinion herein. Opinion by Judge Halligan. Chief Judge Wilson and Judges Rivera, Garcia, Singas, Cannataro and Troutman concur.

Decided June 15, 2023